**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESSE J. COLON,** | : | **CIVIL ACTION NO. 1:19-CV-1872** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE DAVEY TREE EXPERT** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Jesse J. Colon brings claims against his former employer, defendant The Davey Tree Expert Company ("Davey Tree"), pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. and Cons. Stat. Ann § 955. Davey Tree moves for summary judgment on all claims. We will deny Davey Tree's motion.

I.    **Factual Background & Procedural History**[1]

   A.    **Davey Tree Background & Employee Classifications**

Davey Tree is an Ohio-based tree maintenance company providing "tree care, ground maintenance, and environmental consulting services" throughout North America, including central Pennsylvania.  (See Doc. 1 ¶ 6; Doc. 5 ¶ 6; Doc. 24 ¶ 1).  Davey Tree's maintenance includes tree-trimming to clear vegetation from electrical lines.  (See Doc. 24 ¶ 2).  Two employees generally perform this particular type of maintenance: a trimmer and a groundman.  (See id. ¶ 3).  As the names imply, a trimmer uses certain tools to cut tree limbs; a groundman remains on the ground and retrieves the felled limbs, cuts large limbs into manageable sizes as needed, and places the limbs into a woodchipper.  (See id. ¶¶ 4-5).  A trimmer reaches the tree limbs via a bucket truck or by climbing the trees with a harness for assistance.  (See Doc. 23-2, Colon Dep. 55:19-57:2).  A groundman's work typically involves creating a "sled" of branches stacked on top of one another, and then dragging the sled to place branches into the woodchipper.  (See id. at 58:18-59:21).  Sleds can be made larger or smaller depending on the groundman's preferences—

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 24, 25).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

there is no particular weight or number of branches required to form a sled.  (See id. at 59:23-60:15; Doc. 25-2, Kline Dep. 30:18-31:13).  Two crews often work together at a given job site and the senior person at a given jobsite is usually designated as the foreman.  (See Doc. 25-4, Bunker Dep. 40:5-41:8).  Each jobsite requires at least one foreman.  (See Doc. 25-3, Baez Dep. 18:25-19:16).  Several foremen, in turn, report to the general foreman, and the general foreman works in a management capacity, assigning crews to particular jobsites according to company needs.  (See id. at 22:21-23:1).

The groundman and trimmer positions are separated into several distinct "classes"—progressing from beginner trainees to levels C, B, and A.  (See Doc. 23-1 at 6, 9).  These levels are also referred to as "third, second, and first class," respectively.  (See Doc. 24 ¶¶ 20-21; Colon Dep. 63:11-22).  The groundman is the lower of the two positions on the employment ladder at Davey Tree.  (See Colon Dep. 53:5-11).  A groundman acts in a support capacity and does not perform trimmer work, (see Bunker Dep. 35:6-24), nor does the groundman have any supervisory responsibilities, (see Doc. 23-1 at 6).  A trimmer, however, is often required to do groundman work in addition to or instead of trimmer responsibilities.  (See Doc. 24 ¶ 24; Bunker Dep. 40:5-41:8).  A trimmer may also act in a supervisory role as a foreman.  (See Colon Dep. 64:13-22; Doc. 23-2 at 9).  Due to this overlap in duties, a trimmer or a foreman often completes groundwork, even though they may not be classified as a groundman.  (See Baez Dep. 13:2-10).

In addition to responsibilities specific to a groundman or a trimmer, many jobsites require additional duties such as "flagging," or directing traffic using a

"stop and slow paddle." (See Doc. 24 ¶ 25; Baez Dep. 31:13-32:3). Traffic control is subject to state regulation and, consequently, flaggers must complete a mandatory training program. (See Bunker Dep. 43:3-19). Of particular import to the instant matter, we note that Davey Tree's groundmen often assume flagging responsibilities. (See Doc. 24 ¶ 28).

## B.    October 2017 Injury & Subsequent Work Assignments

Colon worked for Davey Tree beginning in 2012 as a groundman. (See id. ¶ 19). Colon eventually progressed to a first-class trimmer, the most-skilled and highest-paid trimmer position. (See id. ¶¶ 20-22). During a work assignment in late October 2017, Colon suffered an injury while moving a tree limb at his worksite. (See id. ¶ 29). After a medical evaluation on November 2, Colon returned to work with diagnoses of left hip bursitis and an abdominal muscle strain, as well as resulting work restrictions. (See id. ¶ 31; Doc. 23-2 at 77). These restrictions included "pushing/pulling" limited to one to three hours, and a 25-pound limit on lifting and carrying. (See Doc. 23-2 at 77).

Over the next several months, Colon's condition worsened. On November 13, an updated medical note confines Colon to zero hours "pulling/pushing" and three to five hours standing and walking. (See id. at 79). Doctor's notes in December 2017 and January 2018 restrict him to "light work," involving a 20-pound limit on lifting and carrying objects. (See id. at 81, 82). By February, another note restricts him to sedentary work and a 10-pound maximum on lifting and carrying objects, with instructions to alternate between sitting and standing "as needed." (See id. at 83). During this time, Colon's medical notes contain deteriorating diagnoses. The

initial hip bursitis and abdominal strain progressed to a left hip sprain.  (See id. at 80).  By January 2018, his medical notes state "osteoarthritis," "degenerative changes," and "hip dysplasia."  (See Doc. 25-6 at 6-8).  In February, Colon's doctor recommended left hip replacement.  (See id. at 2-5; Doc. 24 ¶ 54).

Colon provided documentation to his general foreman, Johnny Baez, following each medical visit.  (See Doc. 24 ¶ 34).  Despite his medical restrictions after the injury, Colon continued to work at Davey Tree.  (See id. ¶ 41; Doc. 25 ¶ 41). Baez assigned Colon primarily to flagging duties at various jobsites.  (See Doc. 24 ¶ 42; Baez Dep. 31:10-32:18).  According to Baez, Colon did not express or display any issues performing flagging duties.  (See Baez Dep. 52:25-54:25).  Colon also "floated" between crews as needed and performed various other tasks such as raking, gas tank refills, and preparation of trimmers' ropes.  (See Doc. 24 ¶¶ 47, 52).

The record indicates other employees in Colon's position at Davey Tree have also been permitted to work in similar capacities due to medical restrictions. Colon's foreman, Adam Kline, testified these individuals included Josh Corsey, Ralph Root, and Kline himself.  (See Kline Dep. 22:9-31:13).  Per Kline, Corsey previously worked at Davey Tree and was permitted to do flagging work "exclusively" as a result of elbow surgery.  (See id. at 22:9-23:1).  Root is a current employee who is over 70 years old and, while classified as a first-class trimmer, has performed only flagging and groundwork as a floater since around 2008.  (See id. at 29:1-30:25).  Kline once broke his ankle and flagged exclusively during his recuperation.  (See id. at 23:24-24:5).  Kline also has a chronic neck injury that flares up, and he performs flagging during those periods.  (See id. at 23:5-19).

### C.    April 2018 Leave and August 2018 Termination

Colon requested Family Medical Leave Act ("FMLA") leave for his hip surgery.  (See Doc. 24 ¶ 55).  Colon and Baez filled out an FMLA form in connection with the surgery.  (See Doc. 25-3 at 36-38).  Baez's portion of the form stated Colon's position was a "first class trimmer."  (See id. at 37).  Baez also filled out a description for Colon's job duties, specifying that the job requires the ability to "occasionally" sit, stand, walk, reach above, and bend or stoop.  (See id. at 38).  "Occasionally" on the FMLA form means between 15 minutes to two and a half hours per day.  (See id.)  Baez also indicated the job "occasionally" requires lifting or carrying of objects in each of the following weight categories: zero to 10 pounds, 10 to 20 pounds, and 20 to 50 pounds.  (See id.)  Baez has worked for Davey Tree since 2008, progressing through all levels of groundman and trimmer before his eventual promotion to general foreman.  (See Baez Dep. 14:13-17:5).  He confirmed in a deposition that the requirements he provided were consistent with his on-the-job experience.  (See id. at 87:17-88:10).

The completed FMLA form, however, does not fully align with Davey Tree's official job descriptions for the groundman or trimmer positions.  (See Doc. 23-1 at 5-10).  The official descriptions of the "demands" for the groundman and trimmer positions are identical.  (See id. at 7, 10).  According to Davey Tree, both the groundman and trimmer position require, inter alia, the ability to exert force of up to 100 pounds "occasionally," 50 pounds "frequently," and 20 pounds "constantly;" the ability to lift one's body up a rope and into a tree; and the ability to climb.  (See id.)  The "duties, functions, and responsibilities" sections of the trimmer and

6

groundman jobs also contain some overlap, but the trimmer position imposes more overall responsibilities.  (See id. at 5, 8).

On April 23, Davey Tree approved Colon's FMLA leave request for three months of leave, from April 24 through July 17.  (See Doc. 24 ¶ 55; Doc. 23-2 at 84-85).  Colon then underwent hip replacement for his left hip.  (See Colon Dep. 110:12-15).  Upon returning to Davey Tree on July 18, Colon presented a surgeon's note dated July 11 with the following restrictions: "light duty, alternate standing and sitting no repetitive squatting or kneeling."  (See Doc. 24 ¶ 58; Doc. 23-2 at 86).  The note further indicated the restrictions would be effective until Colon's next follow-up on August 6.  (See Doc. 24 ¶ 59).

It is unclear to whom Colon presented this note, but an email on July 18, 2018, indicates that Davey Tree's human resources department had learned of his medical status.  (See Doc. 23-5 at 36).  Benefits Team Lead Nakwisi Penny emailed Employee Relations Manager Beverly Strom, attaching a copy of Colon's medical note and stating, "no light duty is available."  (See id.)  Penny copied Colon's Area Manager, William Bunker, on the email.  (See id.)  Penny attested during a deposition that the information regarding lack of light duty would have originated with Colon's "supervisor or manager," but did not remember meeting or speaking with anyone about light duty.  (See Doc. 25-7, Penny Dep. 24:10-23).  Nor did Strom or Bunker recall any conversation pertaining to Colon's return to work before receiving Penny's email.  (See Doc. 25-8, Strom Dep. 28:5-16; Bunker Dep. 82:2-24).  Baez, who was not included on the email, also stated he had no knowledge of how Penny came to this conclusion.  (See Baez Dep. 69:11-70:12).

Strom responded to Penny's email, instructing Bunker to call Colon and "discuss his restrictions and indicate you cannot accommodate them," noting "[t]his should be based upon if they are reasonable or not." (See Doc. 23-5 at 38). Both Bunker and Strom spoke with Colon, and Strom requested an updated doctor's note following Colon's next appointment on August 6. (See id.; Doc. 24 ¶ 70). Davey Tree continued Colon's leave of absence. (See Doc. 24 ¶ 69).

Colon's August 6 note removes the light duty restriction and permits Colon to lift 35 to 40 pounds, recommends alternating between sitting and standing "as needed," and continues to prohibit repeated "squatting or kneeling." (See Doc. 24 ¶ 73; Doc. 23-2 at 87). After reviewing the note, Strom again spoke with Colon and indicated he still could not be accommodated. (See Doc. 24 ¶ 83; Doc. 25 ¶ 83). Colon told Strom he believed he could perform the trimmer or groundman positions with his current restrictions. (See Doc. 24 ¶ 88; Doc. 25 ¶ 88). The parties agree Colon "was not required to be cleared for full duty" to return to work at the company. (See Doc. 24 ¶ 85; Doc. 25 ¶ 85). Nonetheless, Davey Tree terminated Colon effective August 6. (See Doc. 24 ¶ 90; Doc. 25 ¶ 90).

Colon filed the instant lawsuit in October of 2019, asserting federal- and state-law claims for disability discrimination. Davey Tree answered the complaint and denied each claim. Following a period of discovery, Davey Tree moves for summary judgment on all of Colon's claims. The motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

The ADA mandates that an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To make out a *prima facie* case of discrimination under the ADA, a plaintiff must establish (1) he has a disability, (2) he is a "qualified individual," and (3) the defendant discriminated against him because of his disability.  <u>See</u> <u>Furgess v. Pa. Dep't of</u>

Corr., 933 F.3d 285, 288-89 (3d Cir. 2019) (citing Chambers *ex rel.* Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 n.19 (3d Cir. 2009)).  In the employment context, the third prong requires showing an "adverse employment action" taken by the employer because of the plaintiff's disability.  See Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002).  The burden of establishing a *prima facie* case "is not onerous," see Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)), and presents a "low bar" for employment-discrimination plaintiffs, see Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) (citation omitted).[2]

Davey Tree's motion for summary judgment challenges Colon's *prima facie* case of disability discrimination on two grounds.  Davey Tree contends (1) Colon is not a "qualified individual" within the meaning of the ADA, and (2) even if Colon is a "qualified individual," he cannot prove Davey Tree acted in bad faith during the interactive process.  We address each contention *seriatim.*

A.    **Qualified Individual**

The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the

---

[2] The PHRA similarly forbids discrimination on the basis of disability.  See 43 PA. STAT. AND CONS. STAT. ANN. § 955(a).  The Third Circuit Court of Appeals applies the ADA's analytical framework to PHRA claims.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).  Our analysis herein applies with equal force to Colon's PHRA claim.

employment position that such individual holds or desires." 42 U.S.C. § 12111(8).
The relevant regulation divides the "qualified individual" analysis into two prongs:
*first*, "the individual satisfies the requisite skill, experience, education and other
job-related requirements of the employment position such individual holds or
desires," and *second*, "with or without reasonable accommodation, [the individual]
can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Davey
Tree only contests the second prong of this analysis. (See Doc. 23 at 13-16).

Whether a particular duty is an essential function of the employment position
is a fact-intensive inquiry. See Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318,
326 (3d Cir. 2003). Such a determination must be made on a case-by-case basis
considering all relevant evidence. Id. (quoting Deane v. Pocono Med. Ctr., 142 F.3d
138, 148 (3d Cir. 1998) (*en banc*)). Whether a function is "essential" is usually a
question of fact for the jury, see Turner v. Hershey Chocolate U.S., 440 F.3d 604, 613
(3d Cir. 2006), with no single evidentiary factor being dispositive, see id. at 613 n.6;
Skerski v. Time Warner Cable Co., 257 F.3d 273, 279 (3d Cir. 2001) (citation omitted);
Deane, 142 F.3d at 148.

In the matter *sub judice*, Colon's FMLA leave concluded on July 17, 2018.
(See Doc. 24 ¶ 55). Upon returning to Davey Tree, Colon presented a July 11
medical note restricting him to "light duty, alternate standing and sitting" and
prohibiting repeated squatting or kneeling. (See Doc. 23-2 at 86). The note does not
contain weight restrictions or a definition of "light duty." (See id.) Davey Tree
indicated it could not accommodate Colon's restrictions and instructed him to
return in two weeks with an updated note. (See Doc. 24 ¶ 69). Colon's August 6

medical note permits him to lift 35 to 40 pounds without a frequency limitation, and continues to recommend alternating periods of sitting and standing, and no repeated squatting or kneeling.  (See Doc. 23-2 at 87).

Davey Tree relies heavily on the "demands" section of its own written description of the groundman and trimmer positions, arguing Colon could not perform the essential functions of either position after returning from FMLA leave in July.  (See Doc. 23 at 13-16).  Davey Tree's physical "demands" sections for these positions are identical, while the "duties, functions, and responsibilities" sections only share a degree of overlap.  (See Doc. 23-1 at 7-10).  Colon responds that the FMLA form Baez filled out in April 2018 provides the true demands of the trimmer position, and that he could have performed them upon his return.  (See Doc. 26 at 16-22).  Comparing the two documents, the FMLA form for a trimmer requires somewhat less in the way of lifting and carrying abilities.  (See Doc. 25-3 at 38).  For example, while Davey Tree's official job description for trimmer requires the ability to move up to 100 pounds of force occasionally, the FMLA form for Colon's position as a trimmer does not indicate any need to exert more than 50 pounds of force, and 50 pounds is necessary only occasionally.  (See Doc. 23-1 at 7, 10; Doc. 25-3 at 37-38).  Davey Tree's description for trimmer also requires the ability to climb, while the FMLA form makes no mention of this requirement.  Furthermore, while Davey Tree insists both a trimmer and groundman must be able to lift their own bodyweight into a tree, this function is disputed.  Indeed, the record evidence indicates that Davey Tree continues to employ Ralph Root as a first-class trimmer—

the same position Colon held—although he has only performed groundman work and flagging duties since at least 2008.  (See Kline Dep. 28:13-30:17).

At this juncture, the essential functions of Colon's trimmer position are disputed.  Colon has proffered competent evidence to create a genuine dispute as to whether climbing or lifting more than 50 pounds are essential functions of the trimmer position at Davey Tree.  These questions of fact are properly resolved by the jury.  See Turner, 440 F.3d at 613.  Thus, we cannot conclude as a matter of law whether Colon was a "qualified individual" who could perform the essential functions of the trimmer position with or without reasonable accommodation.  Cf. 42 U.S.C. § 12111(8).

### B.     Failure to Accommodate

The ADA protects against discriminatory employment actions, including the failure to reasonably accommodate an individual's disability.  See 42 U.S.C. § 12112(b)(5)(A)-(B).  An employer's refusal to make reasonable accommodations for an employee's disability or failure to engage in "reasonable efforts to assist the employee and to communicate with the employee in good faith" both constitute adverse employment actions.  See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (citation omitted).  A plaintiff pursuing a failure to accommodate claim must demonstrate (1) the employer was aware of the employee's disability, (2) the employee requested an accommodation, (3) the employer failed to "make a good faith effort to assist the employee in seeking accommodations," and (4) "the employee could have been reasonably accommodated but for the employer's lack of

good faith." See id. (internal quotation marks and citations omitted).  Davey Tree

contests the third and fourth elements.  (See Doc. 23 at 16-21).

The ADA's interactive process describes the flexible, informal

communication between an employer and employee concerning an employee's

disability, the limitations resulting from that disability, and "potential reasonable

accommodations that could overcome those limitations."  See 29 C.F.R.

§ 1630.2(o)(3); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir.

1999).  A reasonable accommodation may include, inter alia, "job restructuring,

part-time or modified work schedules, [or] reassignment to a vacant position[.]"

See 42 U.S.C. § 12111(9)(B).  Whether a proposed accommodation is reasonable is

usually a question of fact.  See Turner, 440 F.3d at 614.

Both employer and employee have a duty to act in good faith and to attempt

to identify an appropriate reasonable accommodation.  See Colwell, 602 F.3d at 507;

Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997).  Our court of appeals has held

that employers can demonstrate "good faith" by taking such steps as "meet[ing]

with the employee who requests an accommodation, request[ing] information about

the condition and what limitations the employee has, ask[ing] the employee what he

. . . specifically wants, show[ing] some signs of having considered [the] employee's

request, and offer[ing] to discuss available alternatives when the request is too

burdensome."  Taylor, 184 F.3d at 317.

We conclude that factual disputes permeate Rule 56 record concerning the

employer-employee interactive process.  For one, the parties carry over their factual

dispute about the essential functions of Colon's trimmer position.  Davey Tree

insists Colon was not required to be cleared for full duty to return to work and denies any bad faith, maintaining it "encouraged Colon to reapply for employment if and when he was able to perform the essential functions of the job." (See Doc. 24 ¶¶ 85, 91). Yet the emails related to Colon's July 2018 return indicate Davey Tree merely concluded that: (1) light duty was not available, and (2) Colon therefore could not be accommodated. (See Doc. 23-5 at 38-39). No one involved in Colon's employment or termination had any recollection of why Benefits Specialist Penny communicated that no light duty was available. (See Penny Dep. 24:10-23; Baez Dep. 69:11-70:12; Strom Dep. 28:5-16; Bunker Dep. 82:9-21). Instead, Strom's follow-up email to Bunker instructing him to "indicate you cannot accommodate [Colon]" constitutes competent evidence that the company decided no accommodations were feasible before even contacting Colon and beginning the interactive process. (See Doc. 23-5 at 38). The parties also dispute whether Davey Tree reconsidered its position when it received Colon's updated restrictions on August 6 and was no longer limited to "light duty." There is no undisputed evidence of record that Davey Tree considered or offered accommodations for Colon that would have allowed him to perform the essential functions of his position, such as reassignment to a crew that needed flagging, reclassification as a groundman with no climbing responsibilities, or a modified work schedule to account for Colon's restrictions. Cf. 42 U.S.C. § 12111(9)(B).

As the parties dispute the essential functions of the trimmer position as well as what assistance Davey Tree could have provided Colon upon his return from FMLA leave, the court is unable to discern whether Colon could have been

accommodated "but for" Davey Tree's purported lack of good faith.  See Colwell, 602 F.3d at 504.  Accordingly, there is a genuine dispute of material facts regarding whether Davey Tree acted in good faith during its interactions with Colon when he returned from FMLA leave on July 18 until his termination on August 6.  When there is a genuine dispute about good faith, "summary judgment will typically be precluded."  See Taylor, 184 F.3d at 318 (citation omitted).

**IV.** **Conclusion**

We will deny Davey Tree's motion (Doc. 22) for summary judgment.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    January 19, 2022